Dennis R. DeVONA

v.

CITY OF PROVIDENCE, Through its Treasurer, Stephen T. NAPOLITANO, Alias; Anthony J. Mancuso, Alias, Individually and in his capacity as Chief of Police for the City of Providence; John Doe I, Individually and in his supervisory capacity for the City of Providence Police Department; Bonnie Lovell, William Donley, John Doe III, Individually and in their capacities as Police Officers for the City of Providence.

Civ. A. No. 86–0592 L.

United States District Court,
D. Rhode Island.

Feb. 4, 1987.

Joseph A. Kelly, William Jestings, Providence, R.I., for plaintiff.

Joseph F. Penza, John A. Davey, Providence, R.I., for defendants.

## OPINION

LAGUEUX, District Judge.

This matter is before the Court on the motion of all defendants to dismiss or to stay the proceedings because of the existence of a similar proceeding between the parties in the Superior Court of the State of Rhode Island sitting in Providence County. According to the allegations of the Complaint filed here, plaintiff DeVona, on or about October 8, 1985, was on the premises at 350 Washington Street in the City of Providence for the purpose of dropping off furniture at his warehouse. When he arrived, he observed that the access to the loading zone was blocked by a vehicle parked in a clearly marked "No Parking" zone. The vehicle, a private automobile, was occupied by a Providence Police Department patrol woman, later identified as defendant Lovell, who was on a private security detail for Citizens Bank.

Plaintiff further claims that he stopped his vehicle, approached Officer Lovell, and requested her to move her vehicle from the "NO PARKING" area so that he could unload the furniture. In response, defendant Lovell allegedly stated, "I'll make you a deal; I'm not going to cite you for your wheels being left of center, and you're going to let me stay here for the rest of my shift, which is about twenty minutes". Plaintiff alleges that he proceeded to drive his vehicle to the front door of the warehouse, but was unable to unload because the door was spring loaded. He then walked to the side of the building and instructed the officer to move her automobile.

Defendant Lovell refused to do so informing plaintiff that if he wanted her car moved, he would have to have it towed. Plaintiff claims he then went inside a neighboring building to call a towing company and as he did so, he heard the officer's car start up and move away.

Plaintiff alleges that, upon returning to the scene, defendant Patrolman W. Donley was there in his cruiser. According to the complaint, Donley asked plaintiff to pro-

duce his license and registration even though he had legally parked his vehicle in a lot some two-hundred feet away. Plaintiff claims that, upon inquiring about the officer's authority to make such a request, Donley shoved him up against the police car, and searched him. Plaintiff, then, was arrested and transported to the Providence Police Station where he was detained for a period of time.

Based on these alleged facts, plaintiff contends in the complaint filed in this Court on September 29, 1986, that defendants violated his rights under the first, fourth, fifth, sixth, eighth and fourteenth amendments to the Constitution of the United States; violated Article I, sections, five, eight, ten, fourteen and twenty-one of the Rhode Island Constitution; and were guilty of negligent and intentional infliction of emotional distress upon him under state common law.

The federal constitutional claims contained in the complaint allegedly are brought under 42 U.S.C. § 1983; jurisdiction being conferred on this Court by 28 U.S.C. § 1331 (federal question jurisdiction). The state constitutional claims allegedly are brought as private causes of action under Article I, sections five, eight, ten, fourteen and twenty-one and the tort claims are grounded on Rhode Island common law. These state constitutional and common-law claims are before this forum under the doctrine of pendent jurisdiction.

On or about the same date that plaintiff filed his action here, he filed a similar complaint against the same defendants in Providence County Superior Court. The only difference between the two pleadings is that the state complaint named Citizens Bank (in its capacity as employer of the security officers) as an additional defendant. Although it is not clear precisely when the state court complaint was filed, it is clear that both the federal and the state court summons and complaints were served on the defendants at the same time.

On November 17, 1986, defendants here moved to dismiss plaintiff's complaint on the grounds "that the federal proceeding was duplicative, and that in the state action, a more complete resolution of all claims may be had." Oral argument was heard on December 16, 1986, and the Court is now prepared to render a ruling on the matter.

The sole issue before the Court is whether a federal district court should abstain from exercising federal question jurisdiction because of the existence of a parallel state court proceeding which was commenced simultaneously with the federal action and which is more comprehensive than the federal court action? A starting point for the discussion of this parallel proceeding abstention question is the case of *Colorado River Water Dist. v. United States,* 424 U.S. 800, 818–820, 96 S.Ct. 1236, 1247–1248, 47 L.Ed.2d 483 (1976). There, the Supreme Court indicated that a district court is under "a virtually unflagging obligation" to exercise federal question jurisdiction unless exceptional circumstances are present. This principle was reaffirmed by the Court in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 19, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983). In that case, the Court further detailed those factors, which after being discerned as present and "balanced" against each other, would rebut the unflagging obligation of a federal court to exercise jurisdiction. These factors were stated as follows:

(1) The assumption by the state court of jurisdiction over a res.

(2) The inconvenience of the federal forum.

(3) The avoidance of piecemeal litigation.

(4) The relative progress of the suits in the state and federal forums.

(5) Whether federal law provides the rule of decision.

*Moses H. Cone,* 460 U.S. at 19, 23–24, 103 S.Ct. at 938, 941.

The rule that a federal district court has an "unflagging obligation" to exercise its jurisdiction absent exceptional circumstances, however, is not applicable in the present case. This conclusion follows

from the policy upon which the rule is based. A federal court has a duty to exercise its jurisdiction not merely because the plaintiff has rights which can be adjudicated in the federal forum, but also because the plaintiff is intent upon obtaining relief in the federal courts. While determination of such intent may depend upon the facts of each case, it may be objectively determined by looking to the procedural context in which the parallel state and federal proceedings arose as well as to the subject matter of the proceedings themselves. Where a plaintiff has filed a state action, for example, and later files an identical federal action solely as a procedural maneuver, some abuse of process on the part of the plaintiff is apparent from the posture and nature of the case. Abuse of a federal court's capability to adjudicate a case necessarily makes the obligation of the court to adjudicate the case less exacting than in a responsive suit, i.e., where a defendant in a state court action brings a federal case based on the same basic facts. As a result a less stringent standard should be applied by a federal court in deciding whether or not it should exercise its jurisdiction in a repetitive suit situation. *Burrows v. Sebastian*, 448 F.Supp. 51, 53 (N.D. Ill.1978); *Ystueta v. Parris*, 486 F.Supp. 127, 128–129 (N.D.Ga.1980). This standard does not impose an unflagging obligation on the court to exercise jurisdiction which may be rebutted only by the presence of exceptional circumstances. Rather, the process is one of balancing the *Moses H. Cone* indicia (along with any other relevant factors) in order to determine whether or not the court should exercise its undoubted jurisdiction.

Although this precise point of law has never been exactly determined by the Supreme Court or the First Circuit, there are two indications extant that support its existence. In *Calvert Fire Ins. Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1233 (7th Cir.1979), the Seventh Circuit, in interpreting *Colorado River*, noted that "the Supreme Court made it clear that the circumstances justifying federal court deferral to a state proceeding are still considerably more limited than the circumstances permitting federal court deferral to another federal court." Despite suggesting that it was applying *Colorado River*, the Court proceeded to apply a "balancing test" imposing on the district court the obligation of making a "carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise ..." *Id.* at 1233–1234 (quoting *Colorado River*, 424 U.S. at 818–819, 96 S.Ct. at 1247, which in turn cited *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936), a case involving the less stringent standard which is applied where one federal court is deferring to another federal court). In explaining this test in greater detail, the Court indicated that no one factor was controlling, and that the district court judge must exercise discretion in weighing the factors. *Id.* Nor was the list of factors cited in *Colorado River* deemed exhaustive. Rather, the list of factors to be balanced were those mentioned in *Colorado River* plus any "special factors" counselling for or against the exercise of jurisdiction. *Id.*

After setting forth this legal standard, the Court briefly noted the factual context of the suit under appeal. It stated that the state court defendant, Calvert, had brought suit in federal court with the intention of delaying the state court proceedings. *Id.* at 1234 n. 14. Reasoning that preventing a vexatious suit would clearly justify federal deferral to a parallel state proceeding absent strong countervailing reasons for a federal court decision on the matter without further delay, the Seventh Circuit upheld the district court's stay of the federal proceedings. *Id.* at 1234.

The reasoning adopted by the Seventh Circuit in *Calvert* has been given favorable recognition by the Supreme Court. In *Moses H. Cone* the Court noted the following:

On remand from our decision in *Calvert* the District Court and Court of Appeals concluded that the stay should be continued, but rested that decision on a ground

not addressed in the prior Court of Appeals decision (*Calvert Fire Insurance Co. v. Will,* 560 F.2d 792 (C.A.7 1977)) or in any of this Court's opinions in the case. They concluded that the filing of the federal suit was a "defensive tactical maneuver" based on a contrived federal claim; hence, a stay was called for as a "means to deter vexatious use of the federal courts...."

The Court of Appeals in this case [*Moses H. Cone*] relied on similar reasoning. It concluded that, despite chronological priority of filing, the Hospital's state-court suit was a contrived, defensive reaction to Mercury's expected claim for relief and arbitration. 656 F.2d at 944–945. The reasoning of the Courts of Appeals in this case and that in *Calvert*—that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*—has considerable merit.

*Moses H. Cone,* 460 U.S. at 17–18 n. 20, 103 S.Ct. at 937–938 n. 20. Although the Court's decision in *Moses H. Cone* did not rely upon the reasoning of the Seventh Circuit in *Calvert,* it appears from the above quotation that the balancing test embraced by the *Calvert* court has been favorably recognized at least in cases where the federal suit is vexatious in nature.

For further support of the above proposition, one need only turn to the First Circuit's recent decision in *Fuller v. Ramon I. Gil, Inc.,* 782 F.2d 306, 307 (1st Cir.1986). There a state court defendant in a contract dispute brought an action for a declaratory judgment in federal court as a means of expediting the state court proceedings. In upholding the district judge's dismissal of the federal court proceedings, the First Circuit noted that a federal court's duty to exercise its jurisdiction is "relaxed" in a declaratory judgment context. *Id.* at 308–309 n. 3. While this principle, in part, is attributable to the fact that the declaratory judgment statute itself expressly places the decision as to whether or not to grant relief within the discretion of the district judge, it also stems from the procedural abuse

which the statute is likely to engender. The First Circuit explained:

> In our view it would be unthinkable that every time a state (here, commonwealth) court defendant became dissatisfied with that court's provisional resolution of some issue and there was diversity of citizenship, it would rush over to the federal courthouse in the hope of obtaining a more favorable determination ...

*Id.* at 309–310. *See also, National R.R. Passenger Corp., d/b/a Amtrak v. Providence & Worcester RR. Co. and Capital Properties, Inc.,* 798 F.2d 8, 11 (1st Cir. 1986) (quoting the above language in indicating that by staying its hand a district court can easily avoid piecemeal litigation where the issues to be determined in the federal declaratory action are identical to those pending in state court). Although the present case is distinguishable from *Fuller* in that the federal court plaintiff here is not seeking relief under the declaratory judgment statute, it is analogous to *Fuller* because this situation invokes the same concerns which "relax" the duty of a federal court to exercise jurisdiction.

As in the case where a plaintiff brings a declaratory judgment action in federal court merely to obtain "a more favorable determination," a claimant who files simultaneous complaints in both federal and state forums obviously does so in order to postpone as long as possible his decision as to where he can obtain the most advantageous forum in which to litigate his claim. That plaintiff wants to let a few chips fall before he places his bet. As in the declaratory judgment context, such a claimant invokes the jurisdiction of the federal court with no real present intent to pursue adjudication of his rights there, and the obligation of the court to exercise its jurisdiction is necessarily relaxed. Instead of presuming that it will exercise its jurisdiction absent exceptional circumstances, the court, in its discretion, may decline to exercise its jurisdiction. This will occur where, after careful consideration of the policies militating for and against the exer-

cise of jurisdiction, the court finds that the latter outweigh the former.

Having carefully considered the theoretical underpinnings of the parallel proceeding abstention doctrine in cases of vexatious litigation, the Court turns to weighing the policy concerns which argue both for and against the exercise of its jurisdiction in this matter. With respect to the first, second and fourth *Moses H. Cone* factors, it is apparent from the facts of this case that they have no place in this weighing process. Briefly, the case does not deal with a res; the district court is located within a few hundred yards of the state court, and thus, presents no inconvenience for the litigants in terms of its geographical location; and finally, since the complaints were filed simultaneously in the state and federal courts, the actions are at the same state of development in both forums.

Having determined that these factors are inapplicable in the present case, all that is left is consideration of the third and fifth *Moses H. Cone* factors plus any concerns arising from the vexatious nature of plaintiff's federal suit. It is clear that the fifth factor weighs in favor of this court exercising jurisdiction. In his complaint, plaintiff alleges violation of a number of federal constitutional rights. There is no question, then, that federal law provides the rule of decision in portions of this case. *Moses H. Cone,* 460 U.S. at 23–24, 103 S.Ct. at 941. Without minimizing the importance of plaintiff's substantive claims, a number of concerns, however, counsel against the exercise of jurisdiction here.

The first of these concerns arises from the fact that the state proceeding in the present case is more comprehensive than the action brought here. Plaintiff's federal and state constitutional and common law claims are being made against all defendants in both cases. In the state suit, however, Citizens Bank is added as a defendant. Obviously, if this Court were to resolve the matter before it prior to the state court, (which is likely) all claims, arising from the same set of facts, would remain against Citizens Bank in the state court proceeding. That would result in a duplicative set of pleadings, discovery material, court filings, etc., and twice tax the time of most of the parties and witnesses involved in the case. *Ystueta,* 486 F.Supp. at 129. The overall result would be to adjudicate the action piece-meal instead of within one comprehensive proceeding. *See, Liberty Mutual Ins. Co., v. Foremost McKesson, Inc.,* 751 F.2d 475, 477 (1st Cir.1985). Such piecemeal adjudication would result in a waste of legal resources and unnecessarily burden this court's administrative processes.

In addition, it is clearly necessary to discourage these simultaneous and repetitive filings, because they needlessly augment the number of proceedings entertained by the court. This increased administrative burden, in turn, can severely delay adjudication of cases where claimants are truly in need of obtaining relief from the federal courts.

The simultaneous filing of complaints also results in a tremendous waste of judicial resources. If plaintiffs are accommodated by both state and federal courts, they will wait until it is clear which proceeding optimizes their chances for recovery. In the interim, the federal proceedings will continue. If the plaintiff ultimately decides voluntarily to dismiss the federal proceedings in favor of the state action, it is clear that all the actions of the parties (and those of the court itself) which took place up until that point need not have occurred.

This waste, however, is a by-product of a larger problem. Any rule which sanctions simultaneous or repetitive suits places the administration of this court's caseload at the mercy of the procedural posturing of plaintiffs' attorneys. Without the knowledge or the ability to control when a case before it might suddenly "disappear" in favor of a parallel state proceeding, the Court could be adversely affected in the effective administration of its day to day business.

Finally, aside from the delays, the concomitant injury to "true" federal court litigants, the waste and the overall derogation of a federal court's administrative process, simultaneous and repetitive suits intrude upon the delicate balance of federal and state court relations. Any plaintiff who can pursue his claims simultaneously in the state and federal forums necessarily creates competition between the forums to adjudicate his claim. This will occur as each forum attempts to adjudicate the claims as quickly as possible in order to prevent being bound by the outcome in the other forum under the doctrine of res judicata. *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 567, 103 S.Ct. 3201, 3213–3214, 77 L.Ed.2d 837 (1983). As both state and federal forums race towards judgment, friction is created between them at three points. First, it is created by the "unseemly and destructive" nature of the race itself to see which forum resolves the same issues first. *Id.* Secondly, friction is promoted by the ever-present risk that the federal and state forums will issue contradictory interlocutory orders. *Lumen Const., Inc. v. Brant Const. Co.*, 780 F.2d 691, 694 n. 2 (7th Cir.1985). Thirdly, some tension may arise by the parties own attempts to accelerate or stall the proceedings in one forum in order to influence which court finishes first. *Microsoftware Computer Systems v. Ontel Corp.*, 686 F.2d 531, 538 (7th Cir. 1982) (analogyzing the effect of such efforts on the part of the parties to forum shopping). Clearly a rule which promotes the existence of federal-state court conflict in these ways, is inimical to the promotion of orderly justice.

■ Having balanced the detrimental effects arising from the greater comprehensiveness of the state proceeding and the repetitious nature of plaintiff's suit against the consideration that plaintiff's case does involve issues of federal law, this Court concludes that the former outweigh the latter. Therefore, all the claims brought by plaintiff under federal question jurisdiction should be dismissed.

■ In dismissing these claims, it would appear to further judicial economy, convenience and fairness to the litigants to also dismiss the pendent state constitutional and common law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Rosado v. Wyman*, 397 U.S. 397, 402–405, 90 S.Ct. 1207, 1212–1214, 25 L.Ed.2d 442 (1970). It would be much more economical to adjudicate all the claims in the state forum given the early nature of the federal court proceedings and the greater comprehensiveness of the state court proceedings. Moreover, it certainly would be more convenient and fair to the litigants to resolve the pendent claims in the state courts rather than divide adjudication of plaintiff's action between two forums. This is particularly true in terms of fairness given the purely procedural manner in which the plaintiff obtained this Court's jurisdiction with respect to these claims. Finally, dismissal is particularly appropriate with regards to the state constitutional claims in view of the unsettled state of Rhode Island Constitutional law on the issue of whether Article I, sections five, eight, ten, fourteen and twenty-one allow private causes of action for damages for their violation. *See, Hagans v. Lavine*, 415 U.S. 528, 548, 94 S.Ct. 1372, 1385, 39 L.Ed.2d 577 (1974) ("the rationale of *Gibbs* centers upon considerations of comity and the desirability of having a reliable and final determination of the state claim by state courts having more familiarily with the controlling principles and the authority to render a final judgment.")

Thus, in the exercise of its discretion, this Court also dismisses both the pendent state constitutional and common law claims, and in sum, grants defendants' motion to dismiss all the claims in deference to the parallel state court proceedings.

*It is so Ordered.*