**Richard SMEHLIK, Plaintiff,**

v.

**ATHLETES AND ARTISTS, INC., Defendant.**

**No. 93–CV–0510C.**

United States District Court, W.D. New York.

Aug. 24, 1994.

---

Cohen, Swados, Wright, Hanifin, Bradford & Brett (Larry Kerman, of counsel), Buffalo, NY, for plaintiff.

Brown & Fox, P.C. (Eileen Fox, of counsel), New York City, for defendant.

## DECISION and ORDER

CURTIN, District Judge.

Plaintiff Richard Smehlik, a Czechoslovakian hockey player now under contract with the Buffalo Sabres hockey club ("the Sabres"), brought this action against defendant Athletes and Artists ("A & A"), a New York corporation retained by Smehlik to act as his representative in negotiating professional hockey contracts with the Sabres or with other National Hockey League ("NHL") teams. Smehlik's original 3–count complaint alleged breach of contract (Count I), negligent performance of contract (Count II) and fraudulent misrepresentation (Count III).

On July 22, 1993, A & A filed a motion to dismiss the action on three grounds, (i) that the court should abstain from hearing the case in view of a prior state court action brought by A & A against Smehlik concerning the same contract dispute; (ii) failure to state a claim; and (iii) improper venue. On November 2, 1993, I issued an order:

(1) dismissing Counts II and III of the complaint, but granting Smehlik leave to replead Count III;

(2) withholding ruling on the question of abstention; and

(3) withholding ruling on the question of venue, but

 (a) granting Smehlik leave to conduct limited discovery to determine the extent of A & A's contacts with this district, and

 (b) ordering both parties to further brief the venue issue.

Smehlik has filed an amended complaint, repleading the original Count III as Count II. A & A has filed an answer, and moved to dismiss Count II pursuant to Fed.R.Civ.P. 12(b)(6). Smehlik has conducted discovery on A & A's contacts with this district, and both sides have rebriefed the issue of venue. Both parties have also advised the court as to the current status of the state court action. This decision will address A & A's motion to dismiss Count II of Smehlik's amended complaint, and the questions of venue and abstention.

## BACKGROUND

Smehlik was drafted by the Sabres in the 1990 NHL draft. On August 28, 1990, while still in Czechoslovakia, he signed an agreement with A & A under which, *inter alia*, A & A was to act as his exclusive representative in the negotiation of professional hockey contracts with the Sabres, or with whichever team held his rights. The agreement had an

initial term of two years, or until such time as A & A had completed the negotiation of Smehlik's next professional hockey contract, whichever was longer.

A & A, a New York corporation whose principal place of business is in New York, New York, claims that it commenced contract negotiations with the Sabres on behalf of Smehlik in the summer of 1990. The negotiations, which were conducted entirely via telephone and fax, continued periodically until about April 1992. At that time, A & A received a letter from Smehlik stating that he was terminating his agreement with A & A, and/or that he believed the agreement to be invalid. Subsequently, in August 1992, Smehlik entered into a contract with the Sabres. That contract was negotiated by Rich Winter of The Entertainment & Sports Corporation, Smehlik's current agent.

On May 10, 1993, A & A commenced an action for breach of contract against Smehlik in New York State Supreme Court in New York County, seeking declaratory relief, damages, restitution, and attorneys' fees. Smehlik's answer, dated June 15, 1993, contained four affirmative defenses: (i) breach of contract by A & A, (ii) negligent performance of the agreement by A & A, (iii) misrepresentation by A & A of its ability to perform under the contract, and (iv) indefiniteness or unconscionability of various terms of the agreement. On the same day that Smehlik served his answer in the state court action, he commenced this lawsuit.

## DISCUSSION

### 1. Abstention

 In *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court recognized that in "exceptional circumstances," district courts have discretion to dismiss lawsuits, for reasons of "wise judicial administration," when there are concurrent state court proceedings addressing the same issues. *Id.* at 817–19, 96 S.Ct. at 1246–47. A & A urges that I exercise my discretion under *Colorado River* to dismiss this case because there is a pending state court action involving issues identical to those presented here.

 Indisputably, the issues raised here are the same as those being litigated in the state court action—whether or not there was a valid contract between the parties, and if so, which side breached. However, the existence of a state proceeding involving the same issues is not by itself sufficient to justify dismissal. *Colorado River Water Conservation District v. United States,* 424 U.S. at 817, 96 S.Ct. at 1246. As the Second Circuit has recognized, the *Colorado River* Court:

> identified several factors to be considered by district courts in applying the exceptional circumstances test: the assumption by either court of jurisdiction over any res or property, the inconvenience of the federal forum, the avoidance of piecemeal litigation, and the order in which jurisdiction was obtained. 424 U.S. at 818, 96 S.Ct. at 1246–47.

*Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327 (2d Cir.1986). Further, in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court:

> elaborated upon this test and added two new considerations: whether state or federal law supplies the rule of decision, and whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. 460 U.S. at 23–27, 103 S.Ct. at 941–43.

*Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d at 327. The determination of whether or not to defer to the state court " 'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, *with the balance heavily weighted in favor of the exercise of jurisdiction.*' " *Id.* (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. at 16, 103 S.Ct. at 937); *see also, De Cisneros v. Younger,* 871 F.2d 305, 307 (2d Cir.1989).

 The first factor—assumption of jurisdiction over a *res* or property—is not implicated here. The absence of any jurisdiction over a *res* or property weighs in favor of the

exercise of federal jurisdiction. *De Cisneros v. Younger*, 871 F.2d at 307.

The second factor—the inconvenience of the federal forum—does not weigh in favor of abstention in this case. Although the Western District of New York may be a less convenient forum than New York County for A & A, whose offices are in New York City, New York County would be just as inconvenient for Smehlik, who resides (at least during the hockey season) in Western New York.

Similarly, the third factor—avoidance of piecemeal litigation—does not weigh significantly in favor of abstention here. Since the pendency of an action in state court is, generally, no bar to proceedings concerning the same matter in federal court, courts must consider, in weighing this factor, whether there is some *exceptional* circumstance—for example, where there is a clearly stated federal policy of avoidance of piecemeal adjudication of interdependent property rights, and there is a substantial danger of inconsistent judgments, as in *Colorado River*—justifying a particular concern over piecemeal litigation. *See Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1368–1369 (9th Cir. 1990). There is no such exceptional circumstance here.[1,2]

The fourth factor—the order in which jurisdiction was obtained—also does not weigh significantly in favor of abstention. The Supreme Court has indicated that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. at 21, 103 S.Ct. at 940. Smehlik's complaint in this action was filed on the same day as his answer in the state court action. No significant progress had been made in state court at the time the present action was filed.[3]

The fifth factor—whether federal or state law provides the rule of decision—again fails to favor abstention. The presence of state law issues may weigh in favor of abstention only "in some rare circumstances." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. at 26, 103 S.Ct. at 942. In cases involving only routine issues of state law, which federal district courts are fully capable of deciding, there are no such "rare circumstances." *Travelers Indemnity Co. v. Madonna*, 914 F.2d at 1370. The state law issues that may be raised in the present case are routine issues of breach of contract and misrepresen-

1. In a letter dated July 7, 1994, A & A informed the court that there is a possibility that two separate actions in the Supreme Court in New York County, involving Vladimir Vujtek, a hockey player formerly represented by A & A, and Rich Winter, the present agent of both Smehlik and Vujtek, might be consolidated with the Smehlik state court action. In a subsequent letter, dated July 13, 1994, it indicated that its state court action against Winter consists of a claim or claims for tortious interference with contractual relations, including, *inter alia,* the contracts between A & A and both Smehlik and Vujtek. It maintains that this lends support to its abstention motion, but it did not describe how the cases are related, or the extent to which the issues involved in the various actions may be the same.

2. In this context, Smehlik argues that the claims he asserts here were raised as *affirmative defenses*, not counterclaims, in state court, and that since New York does not have compulsory counterclaims, he retains the right to assert his claims against A & A in a separate state or federal court action. He maintains that he should not be required to litigate his claims as counterclaims in A & A's state court action simply because he was "beaten to the courthouse door" by A & A, and that duplicative litigation could be easily avoided

if A & A were to counterclaim in the present case, and drop its state court action. There is some merit in this position. Certainly, the fact that the litigation could be as easily consolidated in this court as in the state court weighs against relinquishing federal jurisdiction.

3. Because I have withheld ruling on A & A's abstention motion until now, the question arises as to whether more progress has been made in state court than in this action in the interim, and whether continued litigation in this court would be duplicative of the progress already made in state court. Both parties have provided updates on the current status of the state court action. Evidently some discovery has been conducted, but no substantive issues have been decided. Since the state and federal court actions involve identical parties and issues, it is apparent that the fruits of the discovery conducted thus far could be used here to the same extent as they could in the state court action. As a result, I conclude that progress in the two actions has been essentially identical, and there is no reason to weigh such headway as has been made in state court in favor of abstention.

tation that do not require the special attention of a state court.[4]

The sixth factor—whether the state court proceeding will adequately protect the rights of the party seeking to avail itself of federal jurisdiction—also does not support abstention here. A & A argues that Smehlik's rights would be fully protected in state court, since there are only state law questions presented. The Second Circuit, however, has stated that "the possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action. This factor, like choice of law, is more important when it weighs in favor of federal jurisdiction." *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d at 328. Smehlik contends that the state court proceeding will not adequately protect his rights, because questions of law other than state law may apply, and because as a foreign citizen, he "needs the protection of our federal courts in light of the overreaching attempted by A & A, a New York corporation." It is not necessary to decide that Smehlik's assertions have merit to be able to conclude that the sixth factor fails to support abstention here.

In summary, none of the six factors usually considered by the courts in deciding whether to abstain under the *Colorado River* doctrine weighs significantly in favor of abstention in this case.

A & A makes one additional point that has some relevance. It characterizes this lawsuit as "classic reactive litigation," and maintains that "where . . . a suit is 'vexatious or reactive,' courts have repeatedly weighed such factor strongly against retaining federal jurisdiction" (citing *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529, 533

(1st Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1674, 118 L.Ed.2d 393 (1992); *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir.1988); *Allen v. Louisiana State Board of Dentistry*, 835 F.2d 100, 105 (5th Cir.1988); *Lumen Construction, Inc. v. Brant Construction Co., Inc.*, 780 F.2d 691, 693–694 (7th Cir.1985); *Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir.1985); *Goerner v. Barnes*, 730 F.Supp. 767, 770 (S.D.Tex.1990); *DeVona v. City of Providence*, 652 F.Supp. 683, 687–689 (D.R.I.1987); and *Byer Museum of Arts v. North River Insurance Co.*, 622 F.Supp. 1381, 1386–1387 (N.D.Ill.1985)). The characterization of the action as "reactive" is based on the fact that it was commenced two weeks after the filing of A & A's complaint in state court, and on Smehlik's reference to it in his answer to A & A's state court complaint.

■ The commencement of a reactive or vexatious lawsuit may indeed weigh in favor of abstention. However, the cases cited by A & A all involve actions where (i) the plaintiff in the federal suit was also the plaintiff, or had filed counterclaims, in the state suit (*i.e.*, was pursuing essentially identical claims in two forums), and/or (ii) there had been a history of contentious litigation or jurisdictional maneuvering. While it is clear that Smehlik brought this action in response to A & A's commencement of the state action, and he is admittedly seeking what he considers to be a favorable forum, he is not attempting to pursue his claims against A & A in both federal and state forums, and there is apparently no history of contentious litigation or jurisdictional maneuvering between the parties. Smehlik's filing of this suit was a legitimate alternative to filing a counterclaim in A & A's action against him in state court.[5, 6]

---

**4.** Smehlik has also suggested that certain issues in this case may have to be determined on the basis of Czechoslovakian law.

**5.** Smehlik claims that he would have removed A & A's action to federal court if he had had the right to do so, but since he had been sued for less than $50,000, there was no basis for removal. He points out that even if removal had been possible, the Supreme Court has stated that it " 'never has intimated acceptance of [the] view that the decision of a party to spurn removal and

bring a separate suit in federal court invariably warrants the stay or dismissal of the suit under the *Colorado River* doctrine' " (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 290, 108 S.Ct. 1133, 1144, 99 L.Ed.2d 296 (1988), in which the respondent had *both* filed a counterclaim to the petitioner's claim of breach of contract in state court *and* brought a separate action in federal court alleging breach of the same contract).

**6.** A & A maintains that under the terms of its agreement with Smehlik, Smehlik consented to

## 2. Venue

Smehlik argues that venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391. That section provides, in pertinent part, that:

(a) A civil action wherein jurisdiction is founded on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred....

. . . .

(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State....

28 U.S.C. § 1391(a), (c). A & A maintains (i) that its contacts with this district are insufficient for the court to find that it "resides" here for purposes of 28 U.S.C. §§ 1391(a)(1) and (c), and (ii) that none of the events or omissions giving rise to Smehlik's claims occurred here within the meaning of 28 U.S.C. § 1391(a)(2).

New York has more than one federal judicial district. Under 28 U.S.C. §§ 1391(a)(1) and (c), therefore, Smehlik's action may be brought in the Western District only if A & A's contacts with this district "would be sufficient to subject it to personal jurisdiction [here] if [the] district were a separate State."

28 U.S.C. § 1391(c). As an initial matter, I must decide how this language should be applied in practice. In some cases, district courts have looked first to the state's long-arm statute as a basis for determining the sufficiency of the defendant's contacts with one of the districts of a multi-district state. *See e.g., Zinn v. Gichner Systems Group,* 1994 WL 116014 (E.D.Pa.1994); *Walbro Automotive Corp. v. Apple Rubber Products, Inc.,* 1992 WL 251449 (S.D.N.Y.1992);· *Illinois Tool Works v. Rawlplug Co.,* 1990 WL 171601 (N.D.Ill.1990); *Kobush v. American Suzuki Motor Corp.,* 1990 WL 13511 (W.D.Mo.1990). In other instances, however, courts have simply employed a due process analysis, without reference to state law. *See, e.g., Bicicletas Windsor, S.A. v. Bicycle Corp. of America,* 783 F.Supp. 781, 786 (S.D.N.Y. 1992) ("[i]n undertaking a jurisdictional analysis under 28 U.S.C. § 1391, courts apply federal law, not New York law,"); *Benetton Manufacturing Corp. v. Ben–Acadia Ltd.,* 1989 WL 106473 (E.D.La.1989).

■■■ I am persuaded that the approach taken in *Bicicletas Windsor* and *Benetton Manufacturing* is correct. The text of 28 U.S.C. § 1391(c) makes it clear that in a state with more than one judicial district, venue is proper in any district in which a defendant corporation's contacts *"would be sufficient* to subject it to personal jurisdiction *if that district were a separate State...."* (emphasis added). It makes no reference to application of the statutory requirements for personal jurisdiction of the state in which the district is in fact situated. Since any state may legitimately exercise personal jurisdiction over a defendant to the extent that the defendant's contacts with the state are sufficient to comport with the requirements of due process, it follows that a simple due process analysis should be applied in assessing the sufficiency of a defendant's contacts with one of the districts in a multi-

---

the jurisdiction of the courts of the State of New York in the event of dispute. My decision on the threshold issue of abstention cannot properly rest on the interpretation of a clause in an agreement whose validity is in dispute. I would note, however, that on its face, the language of the agree-

ment does not preclude Smehlik from bringing an action for breach of the agreement in federal court, since it does not establish that he agreed that the courts of the State of New York should have *exclusive* jurisdiction over disputes.

district state pursuant to the second sentence of 28 U.S.C. § 1391(c).[7]

In *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Supreme Court made it clear that where a forum seeks to assert specific jurisdiction over an out-of-state defendant, due process requirements are satisfied if it is demonstrated that the defendant has established "minimum contacts" with the forum, and that the defendant's conduct and connections with the forum "are such that he should reasonably anticipate being haled into court there." *Id.* at 474, 105 S.Ct. at 2183 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). A defendant has fair warning that his activities may subject him to the jurisdiction of a foreign forum if he has " 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* at 472, 105 S.Ct. at 2182 (citations omitted). Jurisdiction may not be premised on contacts that are " 'random,' 'fortuitous,' or 'attenuated,' " or are the result "of the 'unilateral activity of another party or a third person.' " *Id.* at 475, 105 S.Ct. at 2183 (citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum." *Id.* (citations omitted). In such circumstances, the defendant may not avoid jurisdiction merely because he has not physically entered the forum:

> [I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an

absence of physical contacts can defeat personal jurisdiction there.

*Id.* at 476, 105 S.Ct. at 2184. Finally, however, the court must consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Id.* (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)).

Under the provisions of the agreement between A & A and Smehlik, A & A was required to use its "best efforts" to secure an offer of a hockey contract for Smehlik from the Sabres. The record establishes that negotiations were conducted by a single A & A employee, Jay Grossman, the director of hockey operations for the firm. Negotiations took place between Grossman and Gerry Meehan, former general manager of the Sabres, in the summer of 1990, and further "periodic discussions" took place until A & A received notice from Smehlik that he wished to terminate his agreement with the firm in April 1992. Negotiations were conducted via telephone and fax; Grossman did not, however, travel to Buffalo to meet with Meehan to discuss Smehlik. In all, Grossman spoke on the telephone with Meehan about a dozen times concerning Smehlik.

I have no difficulty in finding that, under a due process analysis, these contacts "would be sufficient to subject [A & A] to personal jurisdiction if [this] district were a separate State," 28 U.S.C. § 1391(c), and that venue is therefore proper here. The agreement between A & A and Smehlik required A & A to purposefully direct its activities towards a resident of this district, the Sabres. A & A made numerous contacts with the Sabres, by telephone and fax, on behalf of Smehlik. Smehlik's alleged injuries are unquestionably related to those contacts, since his principal claim is that A & A failed to meet its obligation to use its best efforts to negotiate a contract with the Sabres on his behalf. The contacts were created by A & A itself, and were not in any sense " 'random,' 'fortuitous,'

---

7. Of course, the state's jurisdictional statutes *do* come into play when a district court in a multidistrict state makes an analysis of whether an out-of-state defendant may be subjected to personal jurisdiction in the state in which the court is located. The language of the second sentence

of 28 U.S.C. § 1391(c) simply indicates that once it has been established that a defendant may be subjected to personal jurisdiction within the state, venue determinations may be made on the basis of a simple due process analysis.

or 'attenuated,'" or a result "of the 'unilateral activity of another party or a third person.'" *Burger King v. Rudzewicz,* 471 U.S. at 475, 105 S.Ct. at 2183. A & A could reasonably have anticipated being haled into court in this district in an action relating to its contacts with the Sabres on behalf of Smehlik, and I find nothing unfair or unjust in requiring it to defend against Smehlik's claims here.

Since venue is proper in the Western District of New York under 28 U.S.C. §§ 1391(a)(1) and (c), I do not need to consider Smehlik's alternative argument that venue is also proper under 28 U.S.C. § 1391(a)(2).

### 3. Motion to Dismiss Count II

In Count II of the amended complaint, Smehlik alleges that in order to induce him to enter into the contract at issue in this case, A & A "misrepresented to plaintiff its abilities, capabilities and what it would do for plaintiff pursuant to the agreement so as to induce plaintiff to enter the agreement with it." More specifically, he alleges that on or about August 28, 1990, A & A's representative Carl Hron told him:

(1) that A & A could obtain a contract for him with the Sabres for the 1991/92 season;

(2) that it could "make a deal right away;"

(3) that it would arrange for him to participate in the Sabres' 1991 training camp; and

(4) that it would make all necessary arrangements to enable him to attend the Sabres' 1991 training camp, which required, *inter alia,* obtaining a release from his Czech hockey club, T.J. Vitkovice.

He alleges that these representations were made with the intent to deceive him, and to induce him to sign an agreement with A & A that he would not otherwise have signed. He maintains that he reasonably relied on the representations in deciding to sign the agreement. He asserts that A & A failed to obtain a contract with the Sabres for him for the 1991/92 season or to "make a deal right away," and that it failed to follow up on Hron's promises relating to his attendance at the Sabres' 1991 training camp. Finally, he alleges that A & A "misrepresented, concealed or failed to disclose material facts including that it either did not have sufficient knowledge and/or experience in dealing with Czechoslovak laws and practices and/or that if it had adequate knowledge and/or experience with respect to same, that it would fail to utilize same."

A & A has moved to dismiss Count II pursuant to Fed.R.Civ.P. 12(b)(6), on the grounds that Count II simply alleges that A & A made a false promise to perform under the contract, a promise which, it maintains, cannot, under New York law, convert a breach of contract claim into one for fraud. In response, Smehlik contends that the specific oral representations made by Hron, devised for the purpose of inducing him to enter into the agreement, included promises that went beyond A & A's general obligation under the written contract to "use its best efforts to secure offers" from the Sabres or other NHL clubs. He argues that under New York law, one who is fraudulently induced to enter into a contract may maintain a cause of action for fraud separate from his breach of contract cause of action, when the fraud allegations are, as he claims they are here, distinct from the breach of contract claim.

It is well established in the New York courts that when a plaintiff alleges both breach of contract and fraud, "[the] cause of action in fraud may be maintained where the allegations of wrongdoing are distinct from those giving rise to the breach of contract claim and relate to facts extraneous thereto." *Steigerwald v. Dean Witter Reynolds, Inc.,* 107 A.D.2d 1026, 486 N.Y.S.2d 516, 518 (4th Dept.1985). A mere "promissory statement[ ] as to what will be done in the future" may give rise only to a breach of contract claim. *See Stewart v. Jackson and Nash,* 976 F.2d 86, 89 (2d Cir.1992) (citing *Deerfield Communications Corp. v. Cheesebrough–Ponds, Inc.,* 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 89, 502 N.E.2d 1003, 1004 (1986)). However, a false representation of a present fact may give rise to a separable claim for fraudulent inducement, *id.,* and generally speaking, if a promise is "made with a preconceived

and undisclosed intention of not performing it, it constitutes a misrepresentation of material existing fact" upon which an action for fraudulent inducement may be predicated. *Id.* (citing *Sabo v. Delman*, 3 N.Y.2d 155, 160, 164 N.Y.S.2d 714, 716, 143 N.E.2d 906, 908 (1957)). Thus, it is clear that a cause of action for fraudulent inducement may be sustained on the basis of an allegation that the defendant made a promise to undertake some action separate and apart from his obligations under the express terms of the contract, if it is also alleged that he made the promise with no intention of making good on that commitment.

What is much less clear is whether a cause of action for fraud may properly be sustained on the basis of an allegation that the defendant made a promise to perform under the express terms of the contract while intending not to abide by its terms. The New York courts are split on this issue. *See Kenevan v. Empire Blue Cross and Blue Shield*, 791 F.Supp. 75, 80 (S.D.N.Y.1992); *Bower v. Weisman*, 650 F.Supp. 1415, 1422–1423 (S.D.N.Y.1986). The Second Department has recently stated, for example, that where a fraud claim "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie." *McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 574 N.Y.S.2d 58, 59 (2d Dept.1991) (citing *Mastropieri v. Solmar Construction Co., Inc.*, 159 A.D.2d 698, 553 N.Y.S.2d 187 (2d Dept.1990); *Tuck Industries, Inc. v. Reichhold Chemicals, Inc.*, 151 A.D.2d 565, 542 N.Y.S.2d 701 (2d Dept.1989); *Manshul Construction Corp. v. City of New York*, 143 A.D.2d 333, 532 N.Y.S.2d 419 (2d Dept.1988); *Edwil Industries, Inc. v. Stroba Instruments Corp.*, 131 A.D.2d 425, 516 N.Y.S.2d 233 (2d Dept.1987); *Spellman v.*

*Columbia Manicure Manufacturing Co., Inc.*, 111 A.D.2d 320, 489 N.Y.S.2d 304 (2d Dept.1985)). The First Department takes a similar approach. *See Caniglia v. Chicago Tribune–New York News Syndicate, Inc.*, —— A.D.2d ——, 612 N.Y.S.2d 146, 147 (1st Dept.1994) ("a cause of action does not lie where ... the only fraud alleged merely relates to a contracting party's alleged intent to breach a contractual obligation"); *Comtomark, Inc. v. Satellite Communications Network, Inc.*, 116 A.D.2d 499, 497 N.Y.S.2d 371 (1st Dept.1986). On the other hand, the Third Department has recently held that "a party who is fraudulently induced to enter a contract may join a cause of action for fraud with one for breach of the same contract" where the misrepresentations alleged are "misstatements of material fact or promises [to perform under the contract] made with a present, albeit undisclosed, intent not to perform them." *Shlang v. Bear's Estates Development of Smallwood, N.Y., Inc.*, 194 A.D.2d 914, 599 N.Y.S.2d 141, 142–143 (3d Dept. 1993); *Bibeau v. Ward*, 193 A.D.2d 875, 596 N.Y.S.2d 948, 950 (3d Dept.1993) (citing *Deerfield Communications Corp. v. Cheeseborough–Ponds, Inc.*, 68 N.Y.2d 954, 510 N.Y.S.2d 88).

In its Rule 12(b)(6) motion, A & A asks that I first make a determination, from the face of the amended complaint and the written agreement between A & A and Smehlik,[8] that the oral statements allegedly made by Hron to Smehlik must be regarded as promises encompassed by the contractual arrangement between A & A and Smehlik. This I cannot do. The written contract required only that A & A use its "best efforts" on behalf of Smehlik. Whether or not A & A's "best efforts" would have encompassed the oral promises allegedly made by Hron is a matter of factual dispute.[9]

---

8. A & A's motion must be addressed on the face of the pleading, which is deemed to include any document incorporated in it by reference. *Goldman v. Belden*, 754 F.2d 1059, 1065–1066 (2d Cir.1985). Because the dispute in this action centers on the written agreement between the parties, which is referred to in the amended complaint and is in the record, I may properly consider its contents. *See Furman v. Cirrito*, 828

F.2d 898, 900 (2d Cir.1987); *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 113 (2d Cir.1982).

9. In support of its motion to dismiss, A & A has submitted the affidavit of attorney Rodney Brown, which refers to, and attaches a copy of, Smehlik's answers to A & A's interrogatories in A & A's state court action against Smehlik. A & A maintains that Smehlik's response to paragraphs 6 and 7 of the interrogatories establishes that

Even if I were able to find that Hron's representations were nothing more than promises to perform under the contract, I would not be able to grant A & A's motion because Smehlik has adequately pleaded an undisclosed intent by A & A not to perform, and there is a split in the New York case law as to whether or not a cause of action for fraud may be sustained under such circumstances. *See supra.* It is not " 'beyond doubt that [Smehlik] can prove no set of facts in support of his claim which would entitle him to relief.' " *Goldman v. Belden,* 754 F.2d at 1065 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

### CONCLUSION

For the reasons given above, A & A's motions are denied. It is time now to move ahead with resolution of the substantive issues in this action. A telephone conference will be held with the parties on September 2, 1994, at 3 p.m., for the purpose of setting a schedule.

So ordered.

Smehlik understood Hron's oral representations to refer to services that A & A was to perform pursuant to the written agreement between Smehlik and A & A. Smehlik makes two arguments in response. First, he maintains that his interrogatory responses are consistent with his claim that Hron's oral promises were fraudulent misrepresentations as to things that would be done by A & A separate and apart from its obligations under the written agreement. Second, he observes that I may not consider the interrogatory responses without treating the motion as one for summary judgment under Rule 56, and argues that since he has not yet had the opportunity to conduct any substantive discovery in this action, summary judgment would be premature. I agree, at least with Smehlik's second point. To the extent that I consider matters outside the amended complaint, A & A's motion " 'shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.' " *Goldman v. Belden,* 754 F.2d at 1066 (quoting Fed.R.Civ.P. 12(b)). I decline to consider the interrogatory responses at this time, and will not treat A & A's motion as one for summary judgment.