Wouter H. LISSEVELD, an individual, and Enviro Response Products, Inc., a Florida corporation, Plaintiffs,

v.

Alexander C. MARCUS, an individual, and Environmental Solutions International, Inc., a Virginia corporation, Ann Wells, an individual, and Ann Well Associates, an unincorporated business organization, Defendants.

No. 96–336–CIV–FTM–17D.

United States District Court, M.D. Florida, Fort Myers Division.

June 16, 1997.

Merrill Nels Johnson, Merrill N. Johnson, Naples, FL, for Plaintiffs.

Nathaniel G.W. Pieper, Lau, Lane, Pieper, Conley & McCreadie, P.A., Tampa, FL, John S. Hale, Gipple & Hale, McLean, VA, for Alexander C. Marcus, Environmental Solutions Intern., Inc.

Ann Wells, Rowayton, CT, pro se.

Ann Wells Associates, Rowayton, CT, pro se.

*ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN AN INDISPENSABLE AND PARTY, LACK OF PERSONAL JURISDICTION, AND IMPROPER VENUE.*

KOVACHEVICH, Chief Judge.

This CAUSE comes before this Court on the following motions and responses:

(1) Defendants, ALEXANDER C. MARCUS' and ENVIRONMENTAL SOLUTIONS INTERNATIONAL, INC.'s, Motion to Dismiss for Failure to Join an Indispensable and Necessary Party, Lack of Personal Jurisdiction and Improper Venue (Dkt.14), with Memorandum in support (Dkt.15) and individual defendant's affidavit (Dkt.16).

(2) Plaintiffs, WOUTER H. LISSEVELD's and ENVIRO RESPONSE PRODUCTS, INC.'s, memorandum in response to defendants' Motion to Dismiss and attached declaration, affidavits, and exhibits (Dkt.22);

(3) Deposition and brief of evidence of ALASTAIR McKENZIE BOYLE by plaintiffs, ENVIRO RESPONSE PRODUCTS, INC., and WOUTER H. LISSEVELD.

## FACTUAL BACKGROUND

The following facts have been presented to the Court by the parties in support of or opposition to the pending motion. The Court assumes the truth of these factual allegations *only* for the purposes of resolving this motion. In January 1994, plaintiffs, ENVIRO RESPONSE PRODUCTS, INC., and WOUTER H. LISSEVELD (plaintiffs or LISSEVELD or ERPI), began negotiating with LINDSAY W. FORREST (FORREST) for the exclusive distribution rights to FORREST's magnetic fluid conditioners [1] (MFCs). Mr. FORREST, through his New Zealand corporation, WLCL DEBUG International, Ltd.,[2] manufactures and sells MFCs. It is apparent that the name "DE-BUG" has been associated with the MFCs manufactured in New Zealand since plaintiffs first began dealing with Mr. FORREST.

Upon plaintiffs' first attempt to market the DE-BUG MFCs at a trade show in Miami, Florida, plaintiff LISSEVELD discovered that other enterprises were also marketing DE-BUG products at this show. Plaintiff LISSEVELD, contends that Mr. FORREST assured him that these other enterprises were no longer distributing the DE-BUG product and that DE-BUG International had not sold them its products for a long time. Plaintiff LISSEVELD asserts that these previous distributors continued to sell the DE-BUG product despite Mr. FORREST's statements.

Plaintiffs continued to research and test market the MFCs in an effort to prepare for an extensive marketing effort of the DE-BUG product line across North and South America in 1995. To insure that sufficient amounts of the DE-BUG MFCs could be obtained to meet expected demand, plaintiff LISSEVELD entered into an agreement with Mr. FORREST. Under this agreement, plaintiffs would exclusively distribute WLCL DEBUG International's "DEBUG"

---

1. Magnetic fluid conditioners are devices which use the flow of magnetic fields to inhibit the growth and upset the life cycle of microorganisms which live in liquids, especially those known to exist in and degrade lubricating and diesel engine fuel oils. The liquid is pumped through the device to remove the unwanted microorganisms.

2. In April 1995, WCL DEBUG International, Ltd., changed its name to WLCL International Ltd.

MFCs in North and South America excluding certain Caribbean Islands. *See Deposition and Brief of Evidence of ALASTAIR McKENZIE BOYLE* p. 2. The agreement gave plaintiffs the exclusive distribution rights of the DE–BUG MFCs for five (5) years and secured the supply of the product by allowing plaintiffs to manufacture the DE–BUG products in the United States. *Id.* This agreement is evidenced by a letter between LISSEVELD and DEBUG International, dated January 26, 1995. *Id.*

This agreement was short lived. On July 14, 1995, Mr. FORREST wrote a letter to LISSEVELD explaining that he was cancelling the DE–BUG distributorship previously agreed upon. In the letter, Mr. FORREST explained that he felt the plaintiffs had breached the agreement by not making payments in accordance with the terms of the agreement and by not meeting certain financial criteria. However, plaintiff LISSEVELD contends that Mr. FORREST had improper motives for terminating the relationship.

In his affidavit, plaintiff LISSEVELD explains that in January 1995, KEVIN THOMPSON of Sarasota, Florida, was one his customers. LISSEVELD contends that after learning of the arrangement with Mr. FORREST, THOMPSON contacted FORREST in order to join in the DE–BUG MFC business in the United States. In August 1995, THOMPSON starting selling the New Zealand made DE–BUG MFCs in the United States using defendant ALEXANDER MARCUS (defendant or MARCUS) as his sales agent. Apparently, THOMPSON left the MFC business and subsequently, Mr. FORREST's DE–BUG International was dissolved. In February 1996, Mr. FORREST and ROBIN DARLING formed DE–BUG Worldwide Limited, a New Zealand corporation. Defendant MARCUS and his company, defendant ENVIRONMENTAL SOLUTIONS INTERNATIONAL, INC. (ESII), became DE–BUG Worldwide's "exclusive" distributor in the United States.

Defendant ESII is currently the distributor for DE–BUG Worldwide Limited, which is the current manufacturer of the DE–BUG product in New Zealand. DE–BUG Worldwide Limited is a licensee of Forrest Scientific Research Limited, apparently still controlled by LINDSAY FORREST. ESII and MARCUS (defendants) contend that Forrest Scientific Research Limited owns the DE–BUG trademark and the patents on the DE–BUG MFCs. Accordingly, defendants assert that only defendants' use of the DE–BUG mark is authorized.

Plaintiffs' suit is based primarily on the theory that ENVIRO RESPONSE PRODUCTS, INC. owns the DE–BUG trademark. Plaintiff LISSEVELD claims that defendant MARCUS and defendant ESII have misappropriated, copied, and used plaintiffs stylized logo, trademark, advertising materials, business contracts, and other trade secrets. Count one alleges that the defendants have sold the DE–BUG product in the United States during plaintiffs' exclusive distributorship and continue to sell using the mark which constitutes trademark infringement and unfair competition. Plaintiffs allege that the defendants are using the DE–BUG trademark without permission because plaintiffs own the DE–BUG trademark and a United States trademark application has been filed in order to register the mark. However, Forrest Scientific Research Limited, which has not been named in this action, is opposing plaintiff LISSEVELD's registration pending before the Trademark Trial and Appeal Board.

In addition, plaintiffs allege that defendants have interfered with plaintiffs' efforts to promote the product throughout the United States. Plaintiffs complain that defendants are contacting trade publications and trade show organizers in an effort to convince the industry that defendants, not plaintiffs, are entitled to use the DE–BUG mark. Also, plaintiffs hired an advertising agency along with defendant ANN WELLS (WELLS) and defendant ANN WELLS Associates (ASSOCIATES)[3] as their public relations agency. Defendants have communicated with the advertising agency and defendants WELLS and ASSOCIATES in an attempt to gain confidential, proprietary

---

3. Defendants ANN WELLS and ANN WELLS ASSOCIATES did not file a Motion to Dismiss.

trade secret business information disclosed by plaintiffs. Plaintiff LISSEVELD alleges that defendants WELLS and ASSOCIATES divulged vital information to defendants MARCUS and ESII.

Defendants MARCUS and ESII (hereinafter collectively as "defendants") contend that plaintiffs no longer have the authority to use the DE–BUG name because Forrest Scientific Research Limited has effectively terminated plaintiffs' distributorship and has given the rights to distribute to defendant ESII. Moreover, defendants contend that the DE–BUG mark has been used in the United States as early as 1989 by Forest Scientific Research Ltd. Accordingly, defendants argue that Forrest Scientific Research is a necessary and indispensable party to this lawsuit. In addition, defendants argue that this Court does not have personal jurisdiction over defendants because of there has been only insignificant contact with the state of Florida. Furthermore, defendants claim that venue is improper.

█ The first issue facing this Court on defendants' Motion to Dismiss is whether Forrest Scientific Research is a necessary party to plaintiffs ERPI's and LISSEVELD's action against defendants MARCUS and ESII. This issue should be balanced against plaintiffs' prerogative to decide the parties to the lawsuit. *JTG of Nashville Inc. v. Rhythm Band Inc.*, 693 F.Supp. 623, 625 (M.D.Tenn.1988). *Rhythm Band*, like the case at hand, concerned a motion to dismiss for failure to join an indispensable party. *Id.* at 624. The plaintiff in *Rhythm Band* (JTG), a Tennessee corporation, alleged that it was the exclusive distributor in the United States of a product line of unique and distinctive children's musical instruments. *Id.* Defendant, Rhythm Band, a Texas corporation, sold similar products which had been registered under the trademark, "Kidsplay". *Id.* The party at issue in *Rhythm Band* was Zenon Music, a Japanese corporation, which created, manufactured, and sold the product line distributed by plaintiff. *Id.* The Court

determined that generally the trademark owner is a necessary party. *Id.* at 626.

"Courts have held consistently that the owner of allegedly infringed intellectual property rights is a person needed for just adjudication under Rule 19." *Id.* at 626. The typical situation arises when a licensee asserts its rights against an alleged infringer without joining the trademark owner licensor. In that scenario, the concern is that the interests of the unjoined party may not be vigorously asserted and it will suffer prejudice. *See Id.* at 627.

> The licensor of a trademark that is the subject of an infringement action by a licensee falls squarely within the language and policy of Rule 19. As the owner of the mark, the licensor has a legally protected interest in the subject matter of the action. A judgment for the alleged infringer, whether based on a finding that the licensed mark is not a valid trademark or that the defendant's mark does not infringe it, may prejudice the licensor's rights in his own mark. A judgment for the plaintiff-licensee could result in double obligations for the defendant, should the licensor subsequently sue on his own.

*Id.* at 626 (citing *Association of Co-op. Members v. Farmland Indus., Inc.*, 684 F.2d 1134 (5th Cir.1982)).

In the case *sub judice*, plaintiffs were the previous distributors of the DE–BUG product.[4] Apparently, plaintiffs' first encounter with the DE–BUG name was when it established a relationship with Mr. FORREST in 1994. The name at issue has always been associated with the magnetic fluid containers and plaintiffs' present product is essentially the same. Plaintiffs allege in their complaint that they adopted and began using the DE–BUG trademark for their United States MFCs. In addition, plaintiffs assert that they developed a logo for their product and the DE–BUG name was presented in a distinctive, stylized font. Plaintiffs assert that defendants' allegations that Forest Scientific Research owns the DE–BUG trademark is without proof and must be ignored. Howev-

---

4. The actual status of the agreement for distributor rights is somewhat contested. Accordingly, "previous distributor" is used for descriptive purposes and does not represent any findings with respect to plaintiffs' agreement with Lindsay Forrest.

er, in plaintiff LISSEVELD's affidavit, he explains that when he began negotiating for the exclusive distributor rights for the DE–BUG MFCs in the United States, he "discovered two other exclusive American distributors of DE–BUG products." Obviously, the DE–BUG name was being used in commerce and was associated with the MFCs from New Zealand.

In order to prove trademark infringement, plaintiffs will have to first show that they acquired trademark rights in the mark. *Tally–Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1022–23 (11th Cir.1989). Plaintiffs currently do not have a state or federal trademark, so they must show that common law trademark rights were appropriated through actual prior use in commerce. *Id.* However, plaintiffs have registered the fictitious name "DE–BUG USA" in Florida. The exclusive right to use a trademark grows out of its use and not its mere adoption. *E.F. Prichard Co. v. Consumers Brewing Co.*, 136 F.2d 512, 518 (6th Cir.1943).

Plaintiffs, as previous distributors of the DE–BUG MFCs, bring this suit against the defendants, the current distributors of DE–BUG. The common link between these distributorships is Mr. FORREST. It is less than clear who actually has the rights to the name DE–BUG. Defendants allege that Forrest Scientific Research owns the DE–BUG trademark and there is support for their argument. Plaintiffs' previous relationship with Mr. FORREST concerning the DE–BUG MFC market suggests that Forrest Scientific Research has a genuine interest in the mark. In fact, plaintiffs only began marketing DE–BUG products in the United States after they entered into an agreement with Mr. FORREST to "exclusively" distribute the products. Moreover, Forrest Scientific's opposition to Plaintiff LISSEVELD's application for registration of the trademark is entirely consistent with defendants' contention of rightful ownership. Although the Trademark Trial and Appeal Board decision is directed exclusively to whether a mark is entitled to federal registration, it demonstrates Forrest Scientific's intention to assert its rights over the DE–BUG mark in the United States.

The situation at hand presents a prime example of a party to be joined, if feasible, under Rule 19. The rule states in pertinent part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reasons of the claimed interest. If the person has not been joined, the court shall order that person be made a party.

Fed.R.Civ.P. 19(a).

Since ownership of the trademark is the central issue in this case, Forrest Scientific Research Limited is a necessary party. Any decision by this Court on this matter will affect Forrest Scientific's future use of the name DE–BUG. If plaintiffs were to prevail on their infringement and unfair competition claims, Forrest Scientific would be foreclosed from establishing its distribution network in the United States under the name DE–BUG; the very distribution network it sought to establish through the initial agreement with the plaintiffs. This Court's determination of ownership of the DE–BUG mark will undoubtedly affect the interests of any person who claims a right to use the DE–BUG mark. If Forrest Scientific Research is not joined in this action, an irreconcilable result may occur. The claims against the defendants cannot proceed until ownership of the DE–BUG mark is determined.

■ Defendants argue that plaintiffs' failure to join a necessary party requires dismissal. This is not necessarily true. If the necessary person is amendable to service of process and joinder will not deprive the court of jurisdiction, the party should be joined or the court should order the party to

be brought into the action. Fed.R.Civ.P. 19. *Advisory Committee's Note 1966 Amendment.* "Only where joinder is not feasible will the question of the party's indispensability arise." *JTG of Nashville Inc. v. Rhythm Band Inc.,* 693 F.Supp. 623, 628 (M.D.Tenn. 1988).

■ Compulsory joinder involves a three part inquiry: (1) the necessity of joinder of the absentee, (2) feasibility of joinder, and (3) indispensability when necessary joinder is not feasible. *See* Fed.R.Civ.P. 19(a) and (b). This Court has already determined that Forrest Research Scientific is a necessary party. However, there is insufficient evidence to determine the feasibility of joinder.

There are no diversity problems because plaintiffs are Florida citizens, defendants MARCUS and ESII are Virginia citizens, defendants ANN WELLS and ANN WELLS ASSOCIATES are Connecticut citizens, and Forrest Scientific Research Limited is a New Zealand corporation. Notwithstanding, the Court has jurisdiction pursuant to 28 U.S.C. § 1338 for the trademark infringement and unfair competition claims arising under the Lanham Act. *See* 15 U.S.C. §§ 1121(a), 1125. Jurisdiction under the Lanham Act is proper without regard to the amount in controversy or to diversity. *Id.*

Significantly, this Court's jurisdiction over Forrest Scientific will depend on an analysis under Florida's long-arm statute and due process requirements of the Fourteenth Amendment. This analysis will be similar to that for defendants' claim that this Court lacks personal jurisdiction over them. However, the memorandum and exhibits submitted to the Court provide only scattered evidence of Forest Research Scientific's business relations and other contacts with the state. Accordingly, the Court is not in a position to rule on those jurisdictional issues at this time. The parties' further arguments focus on the defendants' conduct and contacts in the state of Florida, therefore, the Court will address the issue of personal jurisdiction over the defendants now at issue, MARCUS and ESII.

## I. Personal Jurisdiction

In order to determine whether this Court has personal jurisdiction over non-resident defendants, the Court must determine: (1) whether Florida's long-arm statute permits assertion of jurisdiction; and (2) whether sufficient minimum contacts exist to satisfy the due process requirements of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington,* 326 U.S. 310, 315–17, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 855 (11th Cir.1990).

■ "Where the court does not conduct a discretionary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over the nonresident defendant. A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for directed verdict." *Cable/Home Communication Corp.* 902 F.2d at 855 (citations omitted). The court must accept the facts alleged in plaintiff's complaint as true, to the extent they are not contradicted by defendant's affidavits. *Id.* at 855. Where the plaintiffs' evidence conflicts with that of the defendants, the court must construe all reasonable inferences in favor of the plaintiff. *Id.* Once plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to defendant to challenge plaintiff's allegations using affidavits or other pleadings. *Prentice v. Prentice Colour, Inc.,* 779 F.Supp. 578, 586 (M.D.Fla.1991). If plaintiff's assertions are sufficiently challenged by defendant, then the plaintiff must affirmatively support its jurisdictional allegations and may not merely rely on the factual allegations in the complaint. *Id.*

### A. Florida Long–Arm Statute

■ The Court must examine the Florida long-arm statute as would the Florida Supreme Court, because the reach of the statute is a question of state law. *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.,* 701 F.2d 889, 890–91 (11th

Cir.1983). Florida's long-arm statute must be strictly construed and the burden of proving facts which satisfy the criteria is on the plaintiff. *Id.* at 891. Florida Statute Section 48.193 provides, in pertinent part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself, and if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state;

(b) Committing a tortious act within this state;

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.[5]

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193 (1995).

The Court finds that section (a) is satisfied for both defendants MARCUS and ESII because ESII, through MARCUS personally, have been operating, conducting and engaging in business in Florida. Plaintiffs' exhibits and affidavits demonstrate that defendant ESII, through MARCUS personally, is in the process of establishing a distribution network in Florida. Defendants have marketed and sold the DE–BUG products in Florida at two different trade shows. Defendants have solicited business in Florida during these trade shows and defendants' products are the subject matter of this lawsuit. Moreover, defendants also satisfy section (b) because the alleged infringement and unfair competition claims are based on conduct which took place in Flori-

da. Furthermore, plaintiffs' allegations of tortious interference with business relations concern efforts by defendant MARCUS personally. Plaintiffs have submitted affidavits and other documents supporting their allegations that defendant MARCUS took affirmative steps to disturb plaintiffs' contractual relationships while he was in Florida. In addition, plaintiffs allege that defendant MARCUS attempted to intimidate plaintiffs' Florida distributors and has acted to prevent the distributor from attending a sales events in Florida.

Plaintiffs assert that defendants have adopted and are using the trademark designed by plaintiffs throughout the United States and Florida. Plaintiffs allege that defendants have placed numerous advertisements in leading trade magazines using the infringing mark. Plaintiffs contend that these trade journals have a wide circulation throughout the United States, particularly in Florida, and the advertisements used by defendants are targeted at the boating industry in Florida. In addition, defendants use a toll free number which uses an abbreviated form of the DE–BUG name which is available to Florida residents. Defendants also have a web page on the internet which is used to solicit orders from around the country, including Florida.

It is undisputed that defendants ESII and MARCUS participated in two boat shows in Florida in an effort to sell the DE–BUG products. The first show was in Miami, Florida, which ran from February 15, through February 21, 1996. The second show, in Fort Lauderdale, Florida, ran from October 29, through November 4, 1996. In his affidavit, the vice president of plaintiff ERPI, WILLIAM O'CONNELL, explains that defendant MARCUS, by and through ESII, participated in both boat shows in Florida. He states that during these boat shows, the defendant distributed pamphlets which paraphrased literature written by plaintiff LISSEVELD and used signs with the alleged infringing mark. In addition,

---

**5.** Section (g) may become applicable to Forrest Scientific Research upon the further develop-

ment of facts.

defendants actually sold DE–BUG products using the trademark.

Plaintiff LISSEVELD alleges that defendant MARCUS has contacted many of his distributors and representatives urging them to leave LISSEVELD and join MARCUS. Mr. O'CONNELL affirms that defendant MARCUS approached plaintiff ERPI's Miami area distributor, DAVID CRAWFORD, during the show in Miami, Florida. O'CONNELL attests that defendant MARCUS asked CRAWFORD to abandon plaintiff ERPI and go to work for defendant ESI. In his affidavit, plaintiff LISSEVELD states that when his distributors have refused to join ESII, defendants have written threatening and intimidating letters to the distributors.

Specifically, defendant MARCUS wrote CRAWFORD a letter accusing him of illegally representing himself as a DE–BUG representative and explained that ESII has the rights to use the DE–BUG logo and to establish authorized distributors, dealers, and representatives. However, the letter from defendant MARCUS denies making a bona fide offer of employment to CRAWFORD. Defendant MARCUS directed ESII's attorney, JAMES KANE, to contact Mr. CRAWFORD in order to persuade him to stop using the DE–BUG name. The letter from Mr. KANE states that ESII is the only company in the United States authorized to use the DE–BUG name and/or logo and requests that CRAWFORD cease and desist from using the DE–BUG name. The letter also requests that CRAWFORD provide proof that he has discontinued using the DE–BUG name.

In addition, Mr. O'CONNELL asserts that defendant MARCUS continues to harass plaintiffs' Florida distributor, CRAWFORD. O'CONNELL explains that defendant MARCUS contacted GAIL HARRISON of Oviatt Marine in Dania, Florida, and insisted that she exclude CRAWFORD from attending an event where local vendors of marine products were invited to display their products. In his affidavit, plaintiff LISSEVELD explains that defendant MARCUS has contacted the magazines in which plaintiffs used to advertise their DE–BUG products and MARCUS

threatened to take legal action if the magazine carried plaintiffs' advertising. In addition, defendant MARCUS has contacted various organizations which run trade shows claiming that plaintiffs have no right to use the DE–BUG mark. Plaintiff LISSEVELD states that defendant MARCUS's efforts have been successful and plaintiffs have been barred from advertising in several magazines. Defendant MARCUS also succeeded in persuading the management at the Fish Expo in Boston, Massachusetts, to remove part of plaintiffs' display without plaintiff LISSEVELD's knowledge or approval.

Plaintiffs' claims against the defendants are for trademark infringement, unfair competition, and tortious interference with plaintiffs' business and contractual relations. The bases for these claims arise out of the aforementioned activities conducted in Florida. Defendants' conduct has been specifically directed towards plaintiffs' business and distributor in Florida. Plaintiffs have been attempting to establish a meaningful distribution network using the DE–BUG mark in Florida and complain that their efforts have been substantially disrupted by the defendants MARCUS and ESII. It is apparent that defendants are also attempting to take advantage of the Florida market for MFC products, however, there is a dispute over the rights to use the DE–BUG trademark.

Defendant MARCUS states in his affidavit that ESII has never maintained an office in the state of Florida and does not maintain any salesmen or agents in the state. Furthermore, the only contact ESII has had with Florida was the distribution of catalogues and sales literature at the Fort Lauderdale and Miami boat shows in 1996. He contends that ESII has sold less than ten (10) decontamination devices manufactured by DE–BUG Worldwide Limited in the state of Florida. In addition, defendant MARCUS contends that neither he nor ESII has ever performed any executive duties in Florida.

Although defendants claim that their marketing in Florida has been unsuccessful, they have not disputed that they used the allegedly infringing DE–BUG mark in all of their marketing efforts. Defendants argue that their conduct in Florida was *de minimis* and

isolated and that ESII has never regularly conducted business in Florida. Nevertheless, committing a tortious act in the state of Florida is sufficient for jurisdiction to exist under section 48.193(1)(b). This Court finds that there is sufficient evidence demonstrating that the defendants conduct, which serves as the bases for the alleged trademark infringement, unfair competition, and tortious interference claims, was conducted in the state of Florida. "[f]or personal jurisdiction to attach under the tortious activity provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant committed a substantial aspect of the alleged tort in Florida by establishing that the activities in Florida were essential to the success of the tort." *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 857 (11th Cir.1990). Plaintiffs have established that a substantial amount of infringing activity and interference with plaintiffs' business relations was committed in Florida. *See Bangor Punta Operations, Inc. v. Universal Marine Co.*, 543 F.2d 1107, 1108 (5th Cir.1976) (explaining that "the breach of a common law copyright subjects the wrongdoer to liability in tort" within the reach of the Florida long-arm statute). Accordingly, personal jurisdiction is proper under section 48.193(1)(b).

### B. Minimum Contacts

■■■ Since the Court has found that the business operations and tortious act provisions of Florida's long-arm statute apply to both defendants, an analysis under the due process requirements of the U.S. Constitution is required. "The mere proof of any one of the several circumstances enumerated in section 48.193 as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts." *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla.1989). This due process determination requires an analysis of: (1) whether the defendants have established minimum contacts with the forum state, and (2) whether exercising personal jurisdiction over nonresident defendants in the forum state would offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 315–17, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Cable/Home Communication Corp.*, 902 F.2d at 857. This Court finds that there are sufficient minimum contacts between defendants MARCUS and ESII and Florida to ensure that maintenance of the suit does not offend traditional notions of fair play and substantial justice.

"A forum may exercise specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities to the forum residents and the resulting litigation derives from alleged injuries that arise out of or relate to those activities." *Cable/Home Communication Corp.*, 902 F.2d at 857 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985)). Due process requires that the nonresident's conduct and connection with the forum State be such that he should reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The "minimum contacts" analysis requires examining the "quality and nature" of the nonresident defendant's activity. *Hanson v. Denckla*, 357 U.S. 235, 253–55, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The defendant must "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* A single act may be sufficient for personal jurisdiction depending on its significance. *Burger King Corp.*, 471 U.S. at 474–75, 105 S.Ct. at 2183.

The Court's determination is guided by these constitutional principles. Defendants, MARCUS and ESII, have purposefully directed their DE–BUG marketing efforts towards Florida. The facts of this case demonstrate that there is a battle between plaintiffs and defendants over the use of the DE–BUG name. Most of the confrontations between the two parties took place in Florida. Defendant MARCUS has contacted plaintiffs' Miami, Florida, distributor, Mr. CRAWFORD, in person and by mail. ESI has displayed the alleged infringing mark in Florida on, at least, two occasions. Moreover, defendants have distributed literature and sold products using the DE–BUG mark in Florida. In

addition, ESII has asserted that plaintiffs cannot conduct business in Florida because they claim that ESII has the exclusive rights to the DE–BUG name and logo in the United States. Moreover, defendants have contacted organizations in Florida in an attempt to have plaintiffs' products and exhibits excluded from Florida trade shows. Consequently, defendants' participation in the two Florida boat shows and interaction with Florida residents and businesses demonstrates that the benefits and protections of the state were utilized. *See Cable/Home Communication Corp.*, 902 F.2d at 858. All of these activities are determinative of the sufficient minimum contacts with Florida necessary for personal jurisdiction.

The Court is next required to determine whether or not the exercise of personal jurisdiction over the defendants would violate traditional notions of fair play and substantial justice. "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987). "[A] purposeful journey to Florida for a reason related to the litigation has been considered a deliberate choice placing defendants on notice that they were subject to suit in Florida." *Cable/Home Communication Corp.*, 902 F.2d at 859. Since defendants have purposefully directed their activities towards Florida, in order to defeat jurisdiction, they must present a compelling case that the presence of some other considerations render jurisdiction unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–79, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985).

Defendants ESII and MARCUS have purposefully directed allegedly unlawful activity in violation of the trademark and unfair competition laws to Florida. In addition, plaintiffs' claim for tortious interference with contractual relations concerning Mr. CRAWFORD stems directly from defendant MARCUS's activity in Florida. The defendants have traveled to Florida in an effort to generate sales for their products using the alleged infringing mark. Defendants have also taken substantial steps to prevent plaintiffs, a Florida corporation, from establishing distribution channels for the DE–BUG product. Moreover, defendant MARCUS has contacted other business organizations in Florida in order to interrupt plaintiffs' business operations. Defendants have also threatened plaintiffs' representatives with legal action if they did not cease operations in Florida.

Holding defendants amenable to personal jurisdiction in Florida does not offend traditional notions of fair play and substantial justice. "The forum State does not exceed its powers under the Due Process clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by customers in the forum State." *World–Wide Volkswagen Corp*, 444 U.S. at 297, 100 S.Ct. at 567–68. In the case at hand, defendants admitted to selling the DE–BUG products in Florida. Also, defendants have used the alleged infringing mark in Florida. Defendant MARCUS personally attended the Florida boat shows and contacted plaintiff's distributor. All of which are central to the issues in this lawsuit.

Defendants have taken affirmative steps to prevent the plaintiffs from conducting business in Florida and have asserted that defendant ESII is the only company with rights to the DE–BUG name. Defendants should have reasonably anticipated being haled into court in Florida. This Court has personal jurisdiction over both defendants. As noted above, there is insufficient evidence to determine whether Forrest Scientific Research, a necessary party, is amenable to personal jurisdiction in Florida. Accordingly, the Court will have to repeat the preceding analysis with respect to Forrest Scientific Research if it is joined as a party in this litigation.

## II. Venue

 The next issue before this Court is Defendants' Motion to Dismiss for improper venue. Defendants argue that the central issue to be determined is whether the corporate defendant, ESII, is "doing business" in the Middle District of Florida. Nevertheless, "doing business" is not the benchmark.

Plaintiffs' complaint alleges a violation of the Lanham Act, 15 U.S.C. § 1125, along with the other state law claims. The Lanham Act does not provide special venue provisions, therefore, the general venue statute is applicable. 28 U.S.C. § 1391 provides:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except where otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if the district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(a), (c).

■ Florida has more than one judicial district; therefore, plaintiffs' action can be brought in the Middle District of Florida only if defendant ESI's contacts with this district "would be sufficient to subject it to personal jurisdiction [here] if [the] district were a separate State." *See Smehlik v. Athletes and Artists, Inc.*, 861 F.Supp. 1162, 1169 (W.D.N.Y.1994). Section 1391(c) makes no reference to the application of the state statutory requirements for personal jurisdiction within the multidistrict state at issue. Accordingly, federal law applies.

Since any state may legitimately exercise personal jurisdiction over a defendant to the extent that the defendant's contacts with the state are sufficient to comport with the requirements of due process, it follows that a simple due process analysis should be applied in assessing the sufficiency of a defendant's contacts with one of the districts in a multidistrict state.

*Id.* at 1169–70.

■ This Court has already analyzed the due process requirements for minimum contacts and traditional notions of fair play and substantial justice for both defendants, MARCUS and ESI. Since defendant MARCUS is an individual defendant, proper venue with regards to him will depend on whether a "substantial part of the events . . . giving rise to the claim occurred" in the Middle District of Florida under § 1391(b). Where more than one district is potentially a proper forum, the court is not required to determine the "best" venue. *Setco Enterprises Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir.1994). The question to ask is whether the district the plaintiff chose has personal jurisdiction over the defendants, whether or not other forums had greater contacts. *See Id.* (construing § 1391(b)).

The defendant ESI's contacts with the Middle District of Florida would be sufficient to subject ESII to personal jurisdiction if this judicial district were a separate state. The defendant ESII has solicited business in the state of Florida. The advertising materials used and the products sold were purposefully directed at Florida's boating market. The products were sold in south Florida however, there is no doubt that defendant ESII expected its DE–BUG products to enter the stream of commerce of the entire state. Furthermore, both defendants, MARCUS and ESII have asserted exclusive rights in the DE–BUG mark in the United States, including Florida. In addition, defendants, MARCUS and ESII, have attempted to exclude the plaintiffs from selling their products anywhere in the country, especially Florida as a whole. Defendant ESII's contacts with various boating organizations and residents of Florida demonstrate that defendant has purposefully established minimum

contacts such that assertion of personal jurisdiction would not offend traditional conceptions of fair play and substantial justice embodied in the Due Process Clause of the Fourteenth Amendment. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 463, 105 S.Ct. 2174, 2177, 85 L.Ed.2d 528 (1985).

The Middle District of Florida is also the proper venue for the claims against defendant MARCUS personally. Venue is proper provided that a substantial part of the events giving rise to the claim occurred there. Defendant MARCUS has taken actions which affected plaintiff ERPI's operations throughout the state. Defendant MARCUS's relevant activities were directed at the state of Florida. Plaintiffs allege that their contractual relations with their Miami, Florida, distributor, CRAWFORD were interfered with when defendant MARCUS was in Florida. Defendant MARCUS's efforts to exclude plaintiffs from selling their products were directed at the state of Florida in particular. Defendant MARCUS's personal involvement has interrupted plaintiffs' DE–BUG enterprise. Plaintiff, LISSEVELD, affirms that he has had to change the name of his MFCs because of defendant MARCUS's misappropriation and interference with his existing and prospective contracts. A plaintiff's choice of forum will not be disturbed unless defendants can make a clear and convincing showing that venue should be changed. Plaintiffs' principal place of business is in Fort Myers, Florida, and they contend that access to pertinent evidence and witnesses are in this judicial district. Defendant MARCUS's interference with plaintiffs' advertising contracts and logo design are substantially connected with this district. Venue is proper in the Middle District of Florida for defendant MARCUS.

III. Conclusion

The plaintiffs have sufficiently established that the Court has personal jurisdiction over the defendants ESII and MARCUS. Defendants have not presented compelling reasons for finding that personal jurisdiction in Florida would be unreasonable. Venue is proper for both defendants, ESII and MARCUS, in the Middle District of Florida. Neverthe-

less, defendants have demonstrated that Florida Scientific Research Limited is an essential party to this suit. There is no conceivable reason for the Court proceed with this case when there is a party missing who may, in fact, be the true owner of the trademark rights in the DE–BUG name. Plaintiffs have admitted that there were DE–BUG representatives selling the DE–BUG MFCs in the United States when they first approached LINDSAY FORREST in 1994. Furthermore, defendants suggest that the name was used by Forrest Scientific Research Limited as early as 1989. The DE–BUG name has been used in connection with the same types of products by both the defendants and plaintiffs. The purpose of the trademark is entirely frustrated by these identical uses. The public cannot discern which company is controlling the quality of the product. Plaintiff LISSEVELD is currently litigating the registration of the trademark in the United States against Forrest Research Scientific. This further illustrates the complexities in this case. Plaintiffs must demonstrate whether joinder of Forrest Scientific Research is feasible. Accordingly, it is

**ORDERED** that the Motion to Dismiss for Failure to Join an Indispensable and Necessary Party, Lack of Personal Jurisdiction, and Improper Venue be **DENIED**. However, Plaintiffs shall have sixty (60) days from the date of this ORDER to amend their complaint to include Forrest Scientific Research Limited as an additional party defendant and to effect service of process thereon. ANY FAILURE BY PLAINTIFFS TO AMEND THEIR COMPLAINT OR PROPERLY SERVE FORREST SCIENTIFIC RESEARCH LIMITED AS A PARTY, IN COMPLIANCE WITH THIS ORDER, WILL RESULT IN IMMEDIATE DISMISSAL.